**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KARI PROSKIN on behalf of a class of all others similarly situated,** | **Case No.** |
| **PLAINTIFF,** | |
| | **JURY TRIAL DEMANDED** |
| **- v. -** | |
| **TZUMI INNOVATIONS LLC,** | |
| **DEFENDANT.** | |

**CLASS ACTION COMPLAINT**

Plaintiff Kari Proskin individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings the following Class Action Complaint against Defendant Tzumi Innovations LLC ("Defendant" or "Tzumi"):

**NATURE OF THE ACTION**

1.      This is a nationwide consumer class action brought on behalf of consumers harmed by Defendant's Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes, and Wipe Out! Multi-Surface Decontaminant Spray (collectively, the "Products") predatorially marketed to low income consumers in the height of an unprecedented pandemic and deceptively advertised as safe and effective antibacterial products.

2.      During the COVID-19 public health crisis, Defendant engaged in unfair and/or deceptive business practices by intentionally deceiving consumers into thinking that its Products were approved pesticide products that had been found by the EPA to be safe and effective without submitting them to the EPA for registration. Without submitting the Products for registration, a mandatory process that allows the EPA to assess the safety and effectiveness of

the Products, Defendant sold pesticide products without regulatory approval. Even worse, Defendant expressly stated that it intended the Wipe Out! Wipes to be sold to "lower income level customers".

3.    In short, Defendant sold illegal pesticides to Plaintiff and Class Members that were not safe and effective for use as an antimicrobial agent on surfaces in homes.

4.    Defendant makes numerous false and misleading claims and omissions on the labels of the Products that make the purchaser believe they were safe and effective for use as an antimicrobial agent on surfaces in homes. These false and misleading claims include, but are not limited to, "Wipe Out Antibacterial Wipes", "KILLS GERMS FAST*", "Cleans and sanitizes", "KILLS 99.9% OF GERMS*", "*Escherichia Coli (E. coli), Staphylococcus Aureus (Staph), Candida Albicans", and "Use it Anytime, Anywhere."  Those claims were made without receiving EPA approval and render the Products illegal.

5.    Plaintiff and each of the Class Members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages and injunctive relief.

## PARTIES

6.    Plaintiff Kari Proskin is domiciled in Pittsfield, Massachusetts, Berkshire County.

7.    Defendant is a New York Limited Liability Corporation with its principal place of business in New York, New York. Defendant sells the Products under the brand "WIPE OUT!" in retail stores across the United States.

8.    Defendant designed, manufactured, warranted, advertised, and sold the Products throughout the United States, including the State of New York.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of states other the state in which Defendant is incorporated and has its principal place of business. Plaintiff is a citizen of Massachusetts and Defendant is a citizen of New York.

10.      This Court has personal jurisdiction over Defendant because Defendant is incorporated and headquartered in New York and because its ties are so continuous and systematic as to render it at home in New York.  The Court also has personal jurisdiction over Defendant because Defendant conducts business in New York. Defendant has marketed, distributed, and sold the Products in New York. Defendant has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this state through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant is headquartered within this District and Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this District.

**GENERAL ALLEGATIONS**

*Wipe Out! Wipes*

12.      Beginning in at least August 2020, Tzumi sold and distributed millions of units of "Wipe Out! Wipes" to retailers for further sales to customers. Tzumi has expressly stated that it intended these products to be sold to "lower income level customers."

13.      The labels on these products, distributed during a deadly pandemic, implied to

3

consumers that Wipe Out! Wipes could be used to disinfect surfaces of bacteria and viruses affecting public health.  The labels proclaimed "Use it Anytime, Anywhere," and described the product as "Antibacterial Wipes" that "KILL[] GERMS FAST*" and "KILL[] 99.9% OF GERMS*" while specifying that the germs at issue were "*Escherichia Coli (E. coli), Staphylococcus Aureus (Staph)," and "Candida Albicans."  The labels also emphasized that the product "Cleans and sanitizes."  Although the back of the label also included language stating "[t]o decrease bacteria on the skin that could cause disease"—a non-pesticidal use under FIFRA, which defines "pest" to exclude "micro-organisms on or in living man or other living animals," 7 U.S.C. § 136(t)—the label as a whole conveys that the intended use is to "sanitize" "anywhere."



14.     This was not inadvertent, but instead reflects Tzumi's intent to market the product as a surface disinfectant rather than a personal care product.  When Tzumi publicly solicited designs for the Wipe Out! Wipes label, it described its intent to sell the product "in [the] cleaning section next to other disinfecting wipes" in retail stores.  After selecting a winning design, Tzumi modified it to remove a prominent image of a hand and a reference to the product as a "hand sanitizer," positioning the product instead to look like disinfectant wipes intended for use on surfaces.  Further, Tzumi selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol: upright plastic canisters with similar text placement and a similar color scheme, rather than the horizontal wrapped bags

that have been used for personal care wipes for decades.

15.     Indeed, in early June 2020, Tzumi itself drafted and sent for posting on the website of Home Depot, its largest retailer, a "product description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces.  The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills *99.9% of viruses and bacteria that can live on surfaces* up to 48 hours" and that "[t]hese all purpose wipes *remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more*." (emphasis added).  Home Depot in fact posted this description provided by Tzumi on its website until approximately September 2020.  In September 2020, Home Depot removed from its website some of the references to disinfecting household surfaces pursuant to a request made by Tzumi on August 19, 2020 that Home Depot remove references to cleaning household surfaces and add the word "Hand Wipes."

16.     Consistent with Tzumi's misleading label, packaging, and marketing materials, retailers have regularly placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle, rather than with personal care or hand sanitizing products in the health and beauty aisle.  For example, EPA and state agency inspectors have found Wipe Out! Wipes sold in cleaning supplies/products aisles in brick-and-mortar Home Depot, Safeway, Walgreens, and "At Home" stores.  Similarly, EPA found Wipe Out! Wipes sold in the household cleaning supplies/disinfection section of retailers' websites, including homedepot.com, hannaford.com, and walmart.com.

17.     No exception to FIFRA applies to this product. The product must be registered to be legally sold or distributed as a surface disinfectant.  The product has not been registered.

18.     Tzumi reports that starting in January 2021, after being contacted by EPA regarding its violations, it changed its label to include wording on the front describing the product as "hand wipes."   However, Wipe Out! Wipes bearing the original label remain on store shelves today.

19.     Tzumi's Wipe Out! Wipes have lost their pandemic-fueled popularity and are now found for sale at significantly lower price points, creating a risk that individuals with limited budgets will substitute this product for registered surface disinfectants thus raising environmental justice concerns.

### Wipe Out! Multi-Surface Wipes

20.     In October 2020, Tzumi also began selling a second product, "Wipe Out! Multi-Surface Wipes," with labeling suggesting that it was intended for use to disinfect surfaces.  The label displays the words "active ingredient" and "purpose: antibacterial" and has graphics of household appliances, bathroom fixtures, and surfaces.

21.     The phrase "purpose: antibacterial" on this label is a pesticidal claim, requiring the product bearing this label to be registered with EPA in order to be lawfully distributed or sold. No exception to the registration requirement applies to this product.  The product has not been registered.



22.     From at least October through November 2020, Tzumi distributed 472,281 units of Wipe Out! Multi-Surface Wipes bearing this label.  Tzumi reports that it no longer offers the Wipe Out! Multi-Surface Wipes bearing this label for distribution to retailers, although some of the product so labeled remains on store shelves.

23.     As with Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes have lost their pandemic-fueled popularity and are now found for sale at significantly lower price points,

---

[1] https://www.ebay.com/itm/284604604722?chn=ps&norover=1&mkevt=1&mkrid=711-213727-13078-0&mkcid=2&itemid=284604604722&targetid=4581183927179145&device=c&mktype=&googleloc=&poi=&campaignid=418233787&mkgroupid=1241348861725295&rlsatarget=pla-4581183927179145&abcId=9300542&merchantid=51291&msclkid=3c75fc4c71241630a8349ef19abe9ce7 (last visited June 30, 2022).

creating a risk that individuals with limited budgets will substitute products bearing this label for registered surface disinfectants thus raising environmental justice concerns.

### *Wipe Out! Multi-Surface Decontaminant Spray*

24.     Another Wipe Out! pesticide product, Wipe Out! Multi-Surface Decontaminant Spray ("Wipe Out! Decontaminant Spray"), is a liquid formula that Tzumi has claimed is "exempt from pesticide registration" as a Minimum Risk Pesticide.   Wipe Out! Decontaminant Spray, however, fails to comply with the conditions for an exemption as a minimum-risk pesticide set out at 40 C.F.R. § 152.25(f).

25.     As an initial matter, the Wipe Out! Decontaminant Spray label displays the claims 66that the spray is "Antimicrobial;" "Decontaminant;" "Removes Mold and Mildew;" "Controls Algae Harmful Bacteria [sic]."   These public health claims are prohibited for Minimum Risk Pesticides under 40 C.F.R. § 152.25(f)(3)(ii). A picture of the Wipe Out! Decontaminant Spray is shown below.



[2]

26.     Moreover, the product label displays inert ingredients that are not listed at 40 C.F.R. § 152.25(f)(2)(i)-(iv).  The Wipe Out! Decontaminant Spray label lists "[c]ommonly consumed food commodities," a category of inert ingredient allowed by the regulation, but it fails to identify the specific food commodities in the product's formula as required under 40 C.F.R.§§ 152.25(f)(2)(i) and 180.950(a).  Moreover, Wipe Out! Decontaminant Spray also lists as inert ingredients chemical substances that are not specified in the regulation and that do not fall within the definition of food commodities, including "fragrance," "colorant", and "Polysorbate 20."  See 40 C.F.R. § 152.25(f)(2)(iv); *see also* https://www.epa.gov/minimum-risk-pesticides/commonly- consumed-food-commodities (color additives "are not to be

---

[2] https://www.instacart.com/products/24319774-wipe-out-decontaminant-fresh-scent-multi-surface-antimicrobial-32-fl-oz (last visited July 7, 2022).

considered to be a 'commonly consumed food commodity' under 40 C.F.R. § 180.950(a)").

27.     Further, by failing to provide Tzumi's street address and telephone number, the label for Wipe Out! Decontaminant Spray does not provide the specified contact information required under 40 C.F.R. § 152.25(f)(3)(iii).

Finally, having failed to qualify as a Minimum Risk Pesticide, the product must not include any false or misleading statements or claims as to the safety of the pesticide or its ingredients, including statements such as "safe," "nonpoisonous," "noninjurious," "harmless" or "nontoxic to humans and pets" with or without such a qualifying phrase as "when used as directed." 40 C.F.R. § 156.10(a)(5)(i)-(ix). However, Wipe Out! Decontaminant Spray makes unqualified and unreviewed safety claims, including, "Non-corrosive, Non-caustic" and "Non-Skin Irritant."

28.     The Wipe Out! Decontaminant Spray was sold on shelves adjacent to EPA-registered disinfectant products.

29.     From February 2021 through April 2021, Tzumi sold 62,796 units of Wipe Out! Decontaminant Spray.  Tzumi reports that it no longer distributes Wipe Out! Decontaminant Spray to retailers.

30.     No exception to FIFRA applies to this product.  The product must be registered to be legally sold or distributed.  The product has not been registered.

### *Plaintiff's Experiences*

31.     In early to mid-March 2021, Plaintiff Proskin purchased at least two packages of Wipe Out! Wipes from Home Depot and Dollar General stores in Massachusetts.

32.     Plaintiff reviewed the product packaging before purchasing Wipe Out! Wipes.

33.     Based on the product packaging, Plaintiff believed that the products were safe

and effective for use as antimicrobial agents on surfaces in homes, and that the products were legal to sell.

34.     However, Wipe Out! Wipes were not safe and effective for use as an antimicrobial agent on surfaces in homes, and were illegal to sell.

35.     Plaintiff would not have purchased Wipe Out! Wipes, or would not have purchased them on the same terms, if she had known that the products were unsuitable for disinfecting surfaces and were illegal to sell.  Plaintiff has therefore suffered economic harm as a result of Defendant's misleading labeling.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this class action lawsuit on behalf of herself and a proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

37.     Plaintiff seek certification of the following Classes:

**National Class:** During the fullest period allowed by law, all persons in the United States who purchased the Products within the United States for personal use and not for resale.

**Consumer Protection Multi-State Class:** During the fullest period allowed by law, all persons in the States of California, Florida, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products within those states for personal use and not for resale.[3]

**Massachusetts Subclass:** During the fullest period allowed by law, all persons in the State of Massachusetts who purchased the Products within Massachusetts for personal use and not for resale.

---

[3] The States in the Consumer Protection Multi-State Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq*.); Florida (Fla. Stat. § 501.201, *et seq*.); Illinois (815 ILCS 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws § 445.901, *et seq*.); Minnesota (Minn. Stat. § 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. 407.010, *et seq*.); New Jersey (N.J. Stat. § 56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law § 349, *et seq*.); and Washington (Wash Rev. Code § 19.86.010, *et seq*.).

38.     Members of the classes described are referred to as "Class Members" or members of the "Classes."

39.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

40.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

42.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common

questions of law or fact include, but are not limited to, the following:

> a) Whether the Products were sold as mislabeled Products;
>
> b) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and conform with the requirements of the FDCA;
>
> c) Whether Defendant's actions violate the consumer protection statutes invoked herein;
>
> d) Whether Defendant breached an express warranty to Plaintiff and Class Members; and
>
> e) Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members.

43.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

44.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

45.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the

benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

46.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
**Violation of State Consumer Protection Statutes**
**(On Behalf of the Consumer Protection Multi-State Class)**

47.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

48.     The Consumer Protection Acts of the States in the Consumer Protection Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

49.     Consumer Protection Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

50.     As a result of the Defendant's use or employment of unfair or deceptive acts or

business practices, Plaintiff and each of the other members of the Consumer Protection Multi-State Class have sustained damages in an amount to be proven at trial.

51.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of the National Class and,**
**alternatively, the Massachusetts Subclass)**

52.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

53.    Plaintiff, and each member of the National Class, formed a contract with Defendant at the time Plaintiff and each Class Member purchased the Products.

54.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

55.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

56.    As set forth above, Defendant purports, through claims made in connection with its advertising, labeling, marketing, and packaging, that the products were legal to sell and safe and effective for antimicrobial use: "Wipe Out Antibacterial Wipes" and "KILLS GERMS FAST*" and on the back in part "To decrease bacteria on the skin that could cause disease"; "Cleans and sanitizes"; "KILLS 99.9% OF GERMS*"; "*Escherichia Coli (E. coli), Staphylococcus Aureus (Staph), Candida Albicans"; and "Use it Anytime, Anywhere." Defendant made such claims that created an express warranty between Plaintiff and the National Class and Defendant.

57.     Plaintiff and Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

58.     Defendant breached express warranties about the Products and their qualities because Defendant's statement about the Products were misleading, as set forth above, and the Products were not legally sold because they were not properly registered as pesticides with the EPA under Section 3 of FIFRA, 7 U.S.C. § 136a.

59.     Plaintiff and Class Members would not have purchased the Products had they known the Products were illegal pesticides.

60.     As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

**COUNT III**
**Fraudulent Concealment**
**(On Behalf of the National Class and, alternatively,**
**the Massachusetts Subclass)**

61.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

62.     As set forth above, Defendant concealed from and failed to disclose to Plaintiff and the Classes that their Products actually were not safe and effective for use as antimicrobial agents on surfaces in homes, and that the products were not legal to sell.

63.     Defendant was under a duty to disclose to Plaintiff and Class Members that the Products were not were not safe and effective for use as antimicrobial agents on surfaces in homes and illegal to sell.

64.     Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover that Defendant was making statements in violation of federal laws prior to purchasing the Products.

65.     Defendant's misrepresentations and omissions that the Products were improperly labeled as approved pesticide products that had been found by the EPA to be safe and effective when they had not been is material to Plaintiff and Class Members.

66.     Plaintiff and Class Members justifiably relied on the omissions of Defendant to their detriment and have suffered as a direct and proximate result of Defendant's conduct actual damages in that they have purchased Products that they would have either paid less for or would have not purchased at all had they known the were not EPA approved pesticidal products.

67.     Plaintiff and Class Members seek actual damages, injunctive and declaratory relief, attorney fees, costs, and any other just and proper relief available under the laws.

**COUNT IV**
**Unjust Enrichment**
**(In The Alternative To Count I And On Behalf of the National Class and, alternatively, the Massachusetts Subclass)**

68.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

69.     Plaintiff and the other Class Members conferred benefits on Defendant by purchasing the Products.

70.     Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiff and the other Class Members.

71.     Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other Class Members because they would have not purchased the Products if the true facts would have been known.

72.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Class Members for their unjust enrichment, as ordered by

the Court.

**COUNT V**
**Violations Of Mass. Gen. Laws Chapter 93A, § 2**
**(On behalf of the Massachusetts Subclass)**

73.     Plaintiff Proskin repeats and re-alleges the allegations above as if set forth herein.

74.     Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

75.     Plaintiff Proskin, members of the Massachusetts Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

76.     Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

77.     The Products constitute property under Mass. Gen. Laws Ch. 93A.

78.     Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

a)  Misrepresenting the approval or certification of goods;

b)  Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

c)  Representing that goods are of a particular standard, quality, or grade, if they are of another;

d)  Disparaging the goods, services, or business of another by false or misleading representation of fact;

e)  Advertising goods with intent not to sell them as advertised;

f)  Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

79.     Using or employing deception, fraud, false pretense, false promise or

misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

80.     Representing that goods have been supplied in accordance with a previous representation when they have not.

81.     Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold illegally labeled Products.

82.     Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

83.     Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

84.     Plaintiff Proskin and the members of the Massachusetts Class have suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, inter alia, they lost money when they purchased the Products and/or paid an inflated purchase price for the Products.

85.     Defendant knew, should have known, or was reckless in not knowing, that the defect in the Products were mislabeled and did not contain the protein advertised.

86.     Defendant had a duty to disclose mislabeling and misbranding because

Defendant had knowledge of the true facts related to the Products prior to making sales of the Products.

87.     As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff Proskin and the members of the Massachusetts Class have been damaged as alleged herein and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

88.     Plaintiff Proskin and the members of the Massachusetts Class have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

89.     Pursuant to Mass. Gen. Laws, Chapter 93A § 9, Plaintiff Proskin and the members of the Massachusetts Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, reasonable attorney's fees, costs, and any other just and proper relief available under Massachusetts law.

## JURY DEMAND

90.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members, prays for judgment and relief against Defendant as follows:

a)   For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

b)   For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c)  For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d)  For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e)  For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f)  For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g)  For such other and further relief as the Court deems just and proper.

Dated: July 12, 2022                    Respectfully submitted,

By:      /s/ Russell Busch
         Russell Busch (6329500)
         **MILBERG COLEMAN BRYSON
         PHILLIPS GROSSMAN, PLLC**
         405 E 50th Street
         New York, NY 10022
         Tel: (630) 796-0903
         rbusch@milberg.com

         **MILBERG COLEMAN BRYSON
         PHILLIPS GROSSMAN, PLLC**
         Nick Suciu III*
         6905 Telegraph Road, Suite 115
         Bloomfield Hills, MI 48301
         Tel: (313) 303-3472
         nsuciu@milberg.com

         **MILBERG COLEMAN BRYSON
         PHILLIPS GROSSMAN, PLLC**
         Rachel Soffin*
         First Tennessee Plaza
         800 S. Gay Street, Suite 1100
         Knoxville, Tennessee 37929
         Tel: 865-247-0080
         rsoffin@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Trenton R. Kashima*
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (308) 870-7804
tkashima@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
J. Hunter Bryson*
Zoe T. Aaron
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com
zaaron@milberg.com

**BURSOR & FISHER, P.A.**
Joel Smith*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel.: (925) 300-4455
jsmith@bursor.com

*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Class*