**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IRIS BOLING, JOHN GORDON, KARI PROSKIN on behalf of a class of all others similarly situated,** | **Case No. 1:22-cv-05919** |
| **PLAINTIFFS,** | **JURY TRIAL DEMANDED** |
| **- V. -** | |
| **TZUMI INNOVATIONS, LLC,** | |
| **DEFENDANT.** | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Iris Boling, John Gordon, and Kari Proskin individually and on behalf of all others similarly situated, by and through their undersigned counsel, file the following First Amended Class Action Complaint against Defendant Tzumi Innovations, LLC ("Defendant" or "Tzumi") as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B):

## NATURE OF THE ACTION

1.      This is a nationwide and multistate consumer class action brought on behalf of consumers who purchased any of Defendant's Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes, and Wipe Out! Multi-Surface Decontaminant Spray (collectively, the "Products").

2.      During the COVID-19 public health crisis, Defendant engaged in unfair and/or deceptive business practices by intentionally deceiving consumers into thinking that its Products were approved pesticide products that had been found by the EPA to be safe and effective on surfaces without submitting them to the EPA for registration. Without submitting the Product for

registration, a mandatory process that allows the EPA to assess the safety and effectiveness of the products, Defendant sold pesticide products without regulatory approval.

3.      Defendant stated that it intended the Wipe Out! Wipes to be sold to "lower income level customers."

4.      In short, Defendant sold illegal pesticides to Plaintiffs and Class Members that were not approved as safe and effective for use as an antimicrobial agent on surfaces in homes.

5.      Defendant makes false and misleading claims on the labels of the Products that make the purchaser believe they were approved as safe and effective for use as an antimicrobial agent on surfaces in homes. These statements include the words, "Use it Anytime, Anywhere," pictures of surfaces such as kitchen appliances and bathroom fixtures, and instructions to "spray directly on the surface."  These statements had the capacity or tendency to deceive or confuse consumers into believing that the products were approved as safe for use on surfaces.  However, the products were no approved for such use.  Therefore, the products were illegal to sell.

6.      Defendant also made a fraudulent omission by failing to disclose that its products had not been approved as safe and effective on surfaces.

7.      Plaintiffs and each of the Class Members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek monetary relief, including statutory damages under New York's GBL §§ 349 and 350.

## PARTIES

8.      Plaintiff Iris Boling is domiciled in Laurelton, New York, Queens County.

9.      Plaintiff John Gordon is domiciled in Pomona, California, Los Angeles County.

10.     Plaintiff Kari Proskin is domiciled in Pittsfield, Massachusetts, Berkshire County.

11.     Defendant is a New York Limited Liability Corporation with its principal place of

business in New York, New York. Defendant sells the Products under the brand "WIPE OUT!" in retail stores across the United States.

12.    Defendant designed, manufactured, warranted, advertised, and sold the Products throughout the United States, including the State of New York.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of states other the state in which Defendant is incorporated and has its principal place of business. For example, Plaintiffs are citizens of California, New York, and Massachusetts and Defendant is a citizen of New York.

14.    This Court has general personal jurisdiction over Defendant because Defendant is incorporated in New York and headquartered in New York.  This Court also has specific personal jurisdiction over Defendant because Defendant conducts business in New York. Defendant has marketed, distributed, and sold the Products in New York. Defendant has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this state through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant is headquartered within this District and Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this District.

## GENERAL ALLEGATIONS

### *Wipe Out! Wipes*

16.    Beginning in at least August 2020, Tzumi sold and distributed millions of units of

"Wipe Out! Wipes" to retailers for further sales to customers. Tzumi has stated that it intended these products to be sold to "lower income level customers."

17.     The labels on these products, distributed during a deadly pandemic, implied to consumers that Wipe Out! Wipes could be used to disinfect surfaces of bacteria and viruses affecting public health.

18.     The back of the label states in large lettering that consumers can "Use it Anytime, Anywhere." This statement is false because the product was not suitable for use on surfaces.

19.     The false statement that the product can be used "anywhere" is bolstered by additional statements describing the product as "Antibacterial Wipes" that "KILL[] GERMS FAST*" and "KILL[] 99.9% OF GERMS*" while specifying that the germs at issue were "*Escherichia Coli (E. coli), Staphylococcus Aureus (Staph)," and "Candida Albicans." The labels also emphasized that the product "Cleans and sanitizes."

20.     Although the back of the label also included language stating "[t]o decrease bacteria on the skin that could cause disease"—a non-pesticidal use under FIFRA, which defines "pest" to exclude "micro-organisms on or in living man or other living animals," 7 U.S.C. § 136(t)—the label as a whole conveys that the intended use is to "sanitize" "anywhere."

| Wipe Out! Wipes |
|---|



21.    The deceptive labeling was not inadvertent, but instead reflects Tzumi's intent to market the product as a surface disinfectant rather than a personal care product.  When Tzumi publicly solicited designs for the Wipe Out! Wipes label, it described its intent to sell the product "in [the] cleaning section next to other disinfecting wipes" in retail stores.  After selecting a winning design, Tzumi modified it to remove a prominent image of a hand and a reference to the product as a "hand sanitizer," positioning the product instead to look like disinfectant wipes intended for use on surfaces.  Further, Tzumi selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol: upright plastic canisters with similar text placement and a similar color scheme, rather than the horizontal wrapped bags that have been used for personal care wipes for decades.

22.    In early June 2020, Tzumi drafted and sent for posting on the website of Home Depot, its largest retailer, a "product description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces.  The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills **99.9% of viruses**

**and bacteria that can live on surfaces** up to 48 hours" and that "[t]hese all purpose wipes **remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more**." (Emphasis added).  Home Depot posted this description provided by Tzumi on its website until approximately September 2020.  In September 2020, Home Depot removed from its website some of the references to disinfecting household surfaces pursuant to a request made by Tzumi on August 19, 2020 that Home Depot remove references to cleaning household surfaces and add the word "Hand Wipes."

23.    Consistent with Tzumi's misleading label, packaging, and marketing materials, retailers have regularly placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle, rather than with personal care or hand sanitizing products in the health and beauty aisle.  For example, EPA and state agency inspectors have found Wipe Out! Wipes sold in cleaning supplies/products aisles in brick-and-mortar Home Depot, Safeway, Walgreens, and "At Home" stores.  Similarly, EPA found Wipe Out! Wipes sold in the household cleaning supplies/disinfection section of retailers' websites, including homedepot.com, hannaford.com, and walmart.com.

24.    No exception to FIFRA applies to this product. The product must be registered to be legally sold or distributed as a surface disinfectant.  The product has not been registered.

25.    Tzumi reports that starting in January 2021, after being contacted by EPA regarding its violations, it changed its label to include wording on the front describing the product as "hand wipes."   However, Wipe Out! Wipes bearing the original label remain on store shelves today.

26.    Tzumi's Wipe Out! Wipes have lost their pandemic-fueled popularity and are now found for sale at significantly lower price points, creating a risk that individuals with limited

budgets will substitute this product for registered surface disinfectants thus raising environmental justice concerns.

### *Wipe Out! Multi-Surface Wipes*

27.    In October 2020, Tzumi also began selling a second product, "Wipe Out! Multi-Surface Wipes," with labeling suggesting that it was intended for use to disinfect surfaces.  The label displays the words "active ingredient" and "purpose: antibacterial" and has graphics of household appliances, bathroom fixtures, and surfaces.

28.    The packaging fo the Wipe Out! Multi-Surface Wipes looks nearly identical to the packaging of the Wipe Out! Wipes, apart from the depiction of surfaces such as bathroom fixtures and kitchen appliances.

29.    The phrase "purpose: antibacterial" on this label is a pesticidal claim, requiring the product bearing this label to be registered with EPA in order to be lawfully distributed or sold.  No exception to the registration requirement applies to this product.  The product has not been registered.



30.    From at least October through November 2020, Tzumi distributed 472,281 units of

Wipe Out! Multi-Surface Wipes bearing this label.  Tzumi reports that it no longer offers the Wipe Out! Multi-Surface Wipes bearing this label for distribution to retailers, although some of the product so labeled remains on store shelves.

31.     As with Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes have lost their pandemic-fueled popularity and are now found for sale at significantly lower price points, creating a risk that individuals with limited budgets will substitute products bearing this label for registered surface disinfectants thus raising environmental justice concerns.

### *Wipe Out! Multi-Surface Decontaminant Spray*

32.     Another Wipe Out! pesticide product, Wipe Out! Multi-Surface Decontaminant Spray ("Wipe Out! Decontaminant Spray"), is a liquid formula that Tzumi has claimed is "exempt from pesticide registration" as a Minimum Risk Pesticide.   Wipe Out! Decontaminant Spray, however, fails to comply with the conditions for an exemption as a minimum-risk pesticide set out at 40 C.F.R. § 152.25(f).

33.     As an initial matter, the Wipe Out! Decontaminant Spray label displays the claims that the spray is "Antimicrobial;" "Decontaminant;" "Removes Mold and Mildew;" "Controls Algae Harmful Bacteria [sic]."  These public health claims are prohibited for Minimum Risk Pesticides under 40 C.F.R. § 152.25(f)(3)(ii). A picture of the Wipe Out! Decontaminant Spray is shown below.



34.    Moreover, the product label displays inert ingredients that are not listed at 40 C.F.R. § 152.25(f)(2)(i) –(iv).  The Wipe Out! Decontaminant Spray label lists "[c]ommonly consumed food commodities," a category of inert ingredient allowed by the regulation, but it fails to identify the specific food commodities in the product's formula as required under 40 C.F.R.§§ 152.25(f)(2)(i) and 180.950(a).  Wipe Out! Decontaminant Spray also lists as inert ingredients chemical substances that are not specified in the regulation and that do not fall within the definition of food commodities, including "fragrance," "colorant", and "Polysorbate 20."  See 40 C.F.R. § 152.25(f)(2)(iv); *see also* https://www.epa.gov/minimum-risk-pesticides/commonly- consumed-food-commodities (color additives "are not to be considered to be a 'commonly consumed food commodity' under 40 C.F.R. § 180.950(a)").

35.    Further, by failing to provide Tzumi's street address and telephone number, the label for Wipe Out! Decontaminant Spray does not provide the specified contact information required under 40 C.F.R. § 152.25(f)(3)(iii).

36.     Finally, having failed to qualify as a Minimum Risk Pesticide, the product must not include any false or misleading statements or claims as to the safety of the pesticide or its ingredients, including statements such as "safe," "nonpoisonous," "noninjurious," "harmless" or "nontoxic to humans and pets" with or without such a qualifying phrase as "when used as directed." 40 C.F.R. § 156.10(a)(5)(i)-(ix).  However, Wipe Out! Decontaminant Spray makes unqualified and unreviewed safety claims, including, "Non-corrosive, Non-caustic" and "Non-Skin Irritant."

37.     The Wipe Out! Decontaminant Spray was sold on shelves adjacent to EPA-registered disinfectant products.

38.     From February 2021 through April 2021, Tzumi sold 62,796 units of Wipe Out! Decontaminant Spray.  Tzumi reports that it no longer distributes Wipe Out! Decontaminant Spray to retailers.

39.     No exception to FIFRA applies to this product.  The product must be registered to be legally sold or distributed.  The product has not been registered.

***Tzumi's Admissions In The EPA Litigation And In This Litigation***

40.     On October 6, 2022, Tzumi admitted in these proceedings that earlier this year, it was in litigation with the EPA over the issue of whether the three products at issue here falsely represented that they were suitable for use on surfaces, as opposed to skin applications only (the "EPA litigation").  *See* MTD, at 6–8 (ECF No. 16).

41.     Tzumi admitted that the EPA litigation resulted in a settlement in which Tzumi was required to pay a civil penalty of $1.5 million, and issue a corrective "public service announcement [that] states that the Hand Wipes are to be used for skin applications only and not as a disinfectant or sanitizer for surfaces, and the other two surface products are to be used for cleaning purposes

and not as a disinfectant or sanitizer on surfaces." *Id.* at 8.

42.     On October 6, 2022, Tzumi submitted to this Court what it represented under oath was a "true and correct" copy of the Settlement in the EPA litigation. Greenbaum Decl., ¶ 6 (ECF No. 17). Tzumi then asked the Court to take judicial notice of the *contents* of the Settlement, and not just its existence, and repeatedly cited the settlement agreement to support factual assertions in its motion to dismiss. *See* MTD, 4-6, 8 (ECF No. 16).

43.     In the Settlement Agreement itself, Tzumi made numerous admissions relevant here:

a)  "It is illegal to sell or distribute a pesticide without first registering it with EPA as a pesticide under Section 3 of FIFRA." Settlement Agreement, Appendix A (ECF No. 17-5).

b)  "Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes, and Wipe Out! Multi-Surface Decontaminant Spray [the three products at issue here] have never been registered as pesticides with EPA under Section 3 of FIFRA, 7 U.S.C. § 136a." Settlement Agreement, p. 4 (ECF No. 17-5).

c)  "Therefore, **these products may not be sold or distributed as intended to eliminate microorganisms on surfaces and should not be used for this purpose**." Settlement Agreement, Appendix A (ECF No. 17-5) (emphasis added).

d)  From at least August through December 2020, Tzumi distributed 4,895,184 units of Wipe Out! Wipes to Home Depot bearing a label stating on the front in part "Wipe Out Antibacterial Wipes" and "KILLS GERMS FAST*" and on the back in part "To decrease bacteria on the skin that could cause disease"; "Cleans and sanitizes"; "KILLS 99.9% OF GERMS*"; "*Escherichia Coli (E. coli),

Staphylococcus Aureus (Staph), Candida Albicans"; and "Use it Anytime, Anywhere."  Settlement Agreement, p. 4 (ECF No. 17-5) (emphasis added).

e) "In early June 2020, a Tzumi employee drafted language to be included in the product description for Wipe Out! Wipes on Home Depot's website. The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills 99.9% of viruses and bacteria that can live on surfaces up to 48 hours" and that "[t]hese all purpose wipes remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more." Home Depot in fact posted this description on its website." *Id.* (emphasis added).

f) "From October through November 2020, Tzumi sold 472,281 units of Wipe Out! Multi-Surface Wipes bearing a label that displayed the words "active ingredient" and "purpose: antibacterial" and graphics of household appliances, bathroom fixtures, and surfaces." *Id.* (emphasis added).

g) "From February 2021 through April 2021, Tzumi sold 62,796 units of Wipe Out! Multi-Surface Decontaminant Spray that stated on its label "Controls Algae Harmful Bacteria" (sic) and "… spray directly on the surface and let stand … ten minutes for antimicrobial response." *Id.* (emphasis added).

### *Plaintiffs' Experiences*

44.     Plaintiff Iris Boling purchased approximately thirty packages of Wipe Out! Wipes from a CVS store in New York.

45.     Within the last year to year-and-a-half, Plaintiff Gordon purchased at least eight packages of Wipe Out! Wipes from CVS and Home Depot stores in California.

46.     In early to mid-March 2021, Plaintiff Proskin purchased at least two packages of Wipe Out! Wipes from Home Depot and Dollar General stores in New York and Massachusetts.

47.    Each of the Plaintiffs reviewed and relied on the product packaging before purchasing Wipe Out! Wipes, including the term "Use it Anytime, Anywhere."

48.    Based on the product packaging, each of the Plaintiffs believed that the products were approved as safe and effective for use as antimicrobial agents on surfaces in homes, and that the products were legal to sell.  Each of the Plaintiffs used the products at issue here on surfaces.

49.    However, Wipe Out! Wipes were not approved as safe and effective for use as an antimicrobial agent on surfaces in homes, and were illegal to sell.

50.    Each of the Plaintiffs bargained for, and expected to receive, a product that was legal to sell and approved as safe and effective for use on surfaces.  None of the Plaintiffs received such a product.

51.    Plaintiffs would not have purchased Wipe Out! Wipes, or would not have purchased them on the same terms, if they had known that the products had not been approved for disinfecting surfaces and were illegal to sell.  Each Plaintiff has therefore suffered economic harm as a result of Defendant's misleading labeling.

## CLASS ACTION ALLEGATIONS

52.    Plaintiffs brings this class action lawsuit on behalf of themselves and proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

53.    Plaintiffs seek certification of the following Classes:

**National Class:** During the fullest period allowed by law, all persons in the United States who purchased the Products for personal use and not for resale in the United States.

**Consumer Protection Multi-State Class:** During the fullest period allowed by law, all persons in the States of California, Florida, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products for

personal use and not for resale within those states.[1]

**California Subclass:** During the fullest period allowed by law, all persons in the State of California who purchased the Products for personal use and not for resale within California.

**New York Subclass:** During the fullest period allowed by law, all persons in the State of New York who purchased the Products for personal use and not for resale within New York.

**Massachusetts Subclass:** During the fullest period allowed by law, all persons in the State of Massachusetts who purchased the Products for personal use and not for resale within Massachusetts.

54.    Members of the classes described are referred to as "Class Members" or members of the "Classes."

55.    Subject to additional information obtained through discovery, the foregoing class definitions may be modified in an amended complaint or at class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

56.    The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

---

[1] The States in the Consumer Protection Multi-State Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq*.); Florida (Fla. Stat. § 501.201, *et seq*.); Illinois (815 ILCS 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws § 445.901, *et seq*.); Minnesota (Minn. Stat. § 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. 407.010, *et seq*.); New Jersey (N.J. Stat. § 56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law § 349, *et seq*.); and Washington (Wash Rev. Code § 19.86.010, *et seq*.).

57.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

58.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

59.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a) Whether the Products were sold as mislabeled Products;

b) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and conform with the requirements of the FDCA;

c) Whether Defendant's actions violate the consumer protection statutes invoked herein;

d) Whether Defendant breached an express warranty to Plaintiffs and Class Members; and

e) Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class Members.

60.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar

or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

61.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

62.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

63.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent

or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
### Violation of New York General Business Laws §§ 349 & 350
### (In The Alternative To Count I And On Behalf Of Plaintiffs Boling, Proskin, And The New York Subclass)

64.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

65.    New York General Business Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

66.    Similarly, New York General Business Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

67.    Defendant intended that Plaintiff Bolin and each of the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct.

68.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices and false advertising, Plaintiff Bolin and each of the other members of the New York Subclass have sustained damages in an amount to be proven at trial.

69.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business and Professions Code §17200, *et seq.***
**(In The Alternative To Count I And On Behalf Of Plaintiff Gordon And The California Subclass)**

70.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

71.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

***The "Unfair" Prong***

72.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

73.    Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive advertising and labeling that exposed the public to pesticide products that had not been found by the EPA to be safe and effective. Defendant's acts and practices offend an established public policy of accurate labeling, and is immoral, unethical, oppressive, and substantially injurious to consumers.

74.    The harm to Plaintiff Gordon and the California Subclass outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

***The "Fraudulent" Prong***

75.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

76.    Defendant's acts and practices alleged above constitute fraudulent business acts or

practices as they have deceived Plaintiff Bolin is highly likely to deceive members of the consuming public. Defendant intended that Plaintiff Bolin and each of the other members of the California Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct.

### The "Unlawful" Prong

77.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

78.    Defendant's acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law. Defendant's false, deceptive, and misleading label statements violate 21 U.S.C. § 343(a)(1), which states, "[a] food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular[.]"

79.    In addition, California law expressly prohibits false advertising. *See* Cal. Bus. & Prof. Code 17500. Moreover, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA") also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised[.]"

80.    The violation of any law constitutes an "unlawful" business practice under the UCL.

81.    As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

82.    Defendant's practices, as set forth above, have misled Plaintiff Gordon, the California Subclass, and the public in the past and will continue to mislead in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

83.    Defendant's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Plaintiff Gordon and the members of the California Subclass and the public will be deceived into purchasing products based on misrepresentations and suffer economic damages to be proven at trial.

84.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

85.    Pursuant to the UCL, Plaintiff Gordon and the California Subclass are entitled to preliminary and permanent injunctive relief and order Defendant to cease this unfair competition, as well as disgorgement and restitution to Plaintiff Gordon and the California Subclass of all Defendant's revenues associated with its unfair competition, or such portion of those revenues as

the Court may find equitable.

**COUNT III**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**California Civil Code §1750, *et seq.***
**(In The Alternative To Count I And On Behalf Of Plaintiff Gordon And The California**
**Subclass)**

86.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

87.     This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq*. Plaintiff Gordon and the California Subclass are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendant's sale of the Products in retail stores to Plaintiff Gordon and the California Subclass were "transactions" within the meaning of Cal. Civ. Code §1761(e). The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

88.     Defendant violated and continues to violate the CLRA by engaging in at least the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff Gordon and the California Subclass that were intended to result in, and did result in, the sale of the Products:

        a.  "Advertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code § 1770(a)(9));

        b.  Representing that the Products "have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code § 1770(a)(5));

        c.  Representing that the Products "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code § 1770(a)(7)).

89.     As a direct and proximate result of Defendant's conduct, Plaintiff Gordon and the California Subclass suffered injury and damages in an amount to be determined at trial.

90.     Plaintiff Gordon and the California Subclass seek restitution, injunctive relief, and attorney's fees in connection with the CLRA claim.

## COUNT IV
### Violation of California's False Advertising Law ("FAL")
### California Business & Professions Code §17500, *et seq.*
### (In The Alternative To Count I And On Behalf Of Plaintiff Gordon And The California Subclass)

91.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

92.    Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…

93.    The "intent" required by Section17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

94.    Defendant's advertising and labeling that represented misrepresented the legality of the Products was an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression of the legality of the Products.

95.    As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff Gordon and the California Subclass have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff Gordon and all members of the California Subclass, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiff, the California Subclass, and the broader public will be irreparably harmed and/or denied an effective and complete remedy.

## COUNT V
### Breach of Express Warranty
### (On Behalf of the National Class and,
### alternatively, the California and New York Subclasses)

96.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

97.    Plaintiffs, and each member of the National Class, formed a contract with Defendant at the time Plaintiffs and each member of the National Class purchased the Products.

98.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

99.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the National Class and Defendant.

100.    As set forth above, Defendant purports, through claims made in connection with its advertising, labeling, marketing, and packaging, that the products were legal to sell and safe and effective for antimicrobial use: "Wipe Out Antibacterial Wipes" and "KILLS GERMS FAST*" and on the back in part "To decrease bacteria on the skin that could cause disease"; "Cleans and sanitizes"; "KILLS 99.9% OF GERMS*"; "*Escherichia Coli (E. coli), Staphylococcus Aureus (Staph), Candida Albicans"; and "Use it Anytime, Anywhere." Defendant made such claims that created an express warranty between Plaintiffs and the National Class and Defendant.

101.    Plaintiffs and the members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

102.    Defendant breached express warranties about the Products and their qualities because Defendant's statement about the Products were misleading, as set forth above, and the Products were not legally sold because they were not properly registered as pesticides with the

23

EPA under Section 3 of FIFRA, 7 U.S.C. § 136a.

103.    Plaintiffs and each of the members of the National Class would not have purchased the Products had they known the Products were illegal pesticides.

104.    As a result of Defendant's breach of warranty, Plaintiffs and each of the members of the National Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

**COUNT VI**
**Fraudulent Concealment**
**(On Behalf of the National Class and, alternatively,**
**the California and New York Subclasses)**

105.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

106.    As set forth above, Defendant concealed from and failed to disclose to Plaintiffs and the Classes that their Products actually were not safe and effective for use as antimicrobial agents on surfaces in homes, and that the products were not legal to sell.

107.    Defendant was under a duty to disclose to Plaintiffs that the Products were not were not safe and effective for use as antimicrobial agents on surfaces in homes and illegal to sell.

108.    Defendant knew that Plaintiffs and the Classes could not reasonably have been expected to learn or discover that Defendant was making statements in violation of federal laws prior to purchasing the Products.

109.    Defendant's misrepresentations and omissions that the Products were improperly labeled as approved pesticide products that had been found by the EPA to be safe and effective when they had not been is material to Plaintiffs and members of the Classes.

110.    Plaintiff and the Classes justifiably relied on the omissions of Defendant to their detriment and have suffered as a direct and proximate result of Defendant's conduct actual damages in that they have purchased Products that they would have either paid less for or would

have not purchased at all had they known the were not EPA approved pesticidal products.

111.    Plaintiffs and the Classes seek actual damages, injunctive and declaratory relief, attorney fees, costs, and any other just and proper relief available under the laws.

## COUNT VII
### Unjust Enrichment
**(In The Alternative To Count I And On Behalf of the National Class and, alternatively, the California and New York Subclasses)**

112.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

113.    Plaintiffs and the other members of the National Class conferred benefits on Defendant by purchasing the Products.

114.    Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiffs and the other members of the National Class.

115.    Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the National Class because they would have not purchased the Products if the true facts would have been known.

116.    Plaintiff and members of the proposed class lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT VIII
### Violations Of Mass. Gen. Laws Chapter 93A, § 2
### (On behalf of Plaintiff Proskin & the Massachusetts Subclass)

117.    Plaintiff Proskin reincorporates and re-alleges each preceding paragraph herein and bring this claim on behalf of the Massachusetts Subclass.

118.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

119.    Plaintiff Proskin, members of the Massachusetts Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

120.    Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

121.    The Products constitute property under Mass. Gen. Laws Ch. 93A.

122.    Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

a)  Misrepresenting the approval or certification of goods;

b)  Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

c)  Representing that goods are of a particular standard, quality, or grade, if they are of another;

d)  Disparaging the goods, services, or business of another by false or misleading representation of fact;

e)  Advertising goods with intent not to sell them as advertised;

f)  Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

123.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

124.    Representing that goods have been supplied in accordance with a previous

representation when they have not.

125.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold illegally labeled Products.

126.    Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

127.    Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

128.    Plaintiff Proskin and the members of the Massachusetts Class have suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, inter alia, they lost money when they purchased the Products and/or paid an inflated purchase price for the Products.

129.    Defendant knew, should have known, or was reckless in not knowing, that the defect in the Products were mislabeled and did not contain the protein advertised.

130.    Defendant had a duty to disclose mislabeling and misbranding because Defendant had knowledge of the true facts related to the Products prior to making sales of the Products.

131.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff Proskin and the members of the Massachusetts Class have been damaged as alleged herein and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

132.    Plaintiff Proskin and the members of the Massachusetts Class have suffered

ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

133.    Pursuant to Mass. Gen. Laws, Chapter 93A § 9, Plaintiff Proskin and the members of the Massachusetts Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, reasonable attorney's fees, costs, and any other just and proper relief available under Massachusetts law.

## JURY DEMAND

134.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment and relief against Defendant as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b)  For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

c)  For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d)  For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

e)  For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

f)  For such other and further relief as the Court deems just and proper.

Dated: October 12, 2022                     Respectfully submitted,

By: /s/ Russell Busch
Russell Busch (6329500)
**MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
rbusch@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Nick Suciu III*
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Rachel Soffin*
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel: 865-247-0080
rsoffin@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Trenton R. Kashima*
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (308) 870-7804
tkashima@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
J. Hunter Bryson*
Zoe T. Aaron
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com
zaaron@milberg.com

**BURSOR & FISHER, P.A.**
Joel Smith (pro hac vice)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

29

Tel.: (925) 300-4455
jsmith@bursor.com

\* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Classes*