# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IRIS BOLING, JOHN GORDON, and KARI
PROSKIN on behalf of a class of all others
similarly situated,

                        PLAINTIFFS,

        - v. -

TZUMI INNOVATIONS, LLC,

                        DEFENDANT.

Case No. 1:22-cv-05919-JSR

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Russell Busch (6329500)
J. Hunter Bryson
Zoe T. Aaron
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
rbusch@milberg.com
hbryson@milberg.com
zaaron@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Rachel Soffin
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel: 865-247-0080
rsoffin@milberg.com

Trenton R. Kashima
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (308) 870-7804
tkashima@milberg.com

Joel Smith
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel.: (925) 300-4455
jsmith@bursor.com

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................... iv

I.   INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ........................................................................................................ 2

A.  Allegations and Procedural History ........................................................................ 2

B.  Summary of the Settlement .................................................................................... 3

  1.  Settlement Class ................................................................................................. 3

  2.  Relief to Class Members .................................................................................... 4

  3.  Class Notice and Settlement Administration ..................................................... 5

  4.  Objection and Exclusionary Provisions ............................................................. 5

  5.  Release Provisions ............................................................................................. 5

  6.  Service Awards and Attorneys' Fees and Expenses .......................................... 6

III. ARGUMENT ............................................................................................................. 7

A.  The Court Should Confirm as Final the Preliminary Certification of the Proposed Settlement
    Class ...................................................................................................................... 7

B.  Final Approval of the Proposed Settlement Is Appropriate ................................... 7

  1.  Rule 23(e)(2)(A): Adequate Representation ...................................................... 9

  2.  Rule 23(e)(2)(B): Arm's Length Negotiation .................................................. 10

  3.  Rule 23(e)(2)(C) and the Overlapping First, Fourth, Fifth, Sixth and Seventh *Grinnell*
      Factors: Adequacy of Relief .......................................................................... 11

      i.   Costs, Risks, Delay of Trial and Appeal (Rule 23(e)(2)(C)(i) and the First, Fourth,
           Fifth, and Sixth *Grinnell* factors) ........................................................... 11

      ii.  Effectiveness of the Proposed Method of Distributing Relief to Class Members (Rule
           23(e)(2)(C)(ii) ........................................................................................... 15

iii.  The Terms of Any Proposed Award of Attorneys' Fees (Rule 23(e)(2)(C)(iii)............ 15

iv.  Any Agreement Required to be Identified Under Rule 23(e)(2)(C)(iv)........................ 16

v.  Remaining *Grinnell* Adequacy Factors ....................................................................... 16

4.  Rule 23(e)(2)(D): Equitable Treatment of Class Members .................................................. 19

5.  Remaining *Grinnell* Factors (*Grinnell* Factors 2 and 3)........................................................ 20

i.  The Reaction of the Class is Overwhelmingly Positive (*Grinnell* Factor 2)................. 20

ii.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) ............................................................................................... 21

IV.  CONCLUSION ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)....................................17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................................................22

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................................13, 18

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................................12, 14, 21

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)...........................................................................................................................8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................................ *passim*

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...............................................................................12

*Cleveland v. Whirlpool Corp.*,
   2022 WL 2256353 (D. Minn. June 23, 2022)...............................................................................10

*deMunecas v. Bold Food, LLC*,
   2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .......................................................................14, 22

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................................................10

*Ellen Berman, et al. v. General Motors LLC*,
   Case No. 2:18-cv-14371, ECF No. 161 (S.D. Fla. Nov. 18, 2019) .............................................10

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...............................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............................................................................17

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).................................................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ...................................................................13, 18, 21

*Gordon v. Vanda Pharmaceuticals Inc.*,
    2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ...........................................................................20

*In re GSE Bonds Antitrust Litig.*,
    2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...........................................................1, 8, 11, 21

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) .............................................................8, 10, 11, 15, 16

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. 2019) .........................................................................................7

*Hamm v. Sharp Electronics Corp.*,
    No. 5:19-cv-00488, ECF No. 62 (M.D. Fla. Jan. 7, 2021) .......................................................10

*Hanlon v. Chrysler*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................................21

*Hernandez v. Uzzal Pizzeria, Inc.*,
    2022 WL 103522 (S.D.N.Y. Apr. 6, 2022) ..............................................................................16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......................................................................18

*Kaupelis v. Harbor Freight Tools USA. Inc.*,
    2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ..........................................................................20

*Maley v. Del Global Techs. Corp.*,
    186 F.Supp.2d 358 (S.D.N.Y.2002) ........................................................................................14

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ....................................................................................................16

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................................................19

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................................................19

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .....................................................................................20

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)......................................17, 18

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.1997) .................................................................13

*Palacio v. E\*TRADE Fin. Corp.*,
    2012 WL 2384419 (S.D.N.Y. June 22, 2012) ...........................................7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) .............................................................19

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)..........................................11

*In re Petrobas Secs. Litig.*,
    2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) (Rakoff, J.) ........................2

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................13

*Santos v. Nuve Miguel Corp.*,
    2023 WL 2263207 (S.D.N.Y. Feb. 28, 2023)............................................7

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................14

*Swetz v. GSK Consumer Health, Inc.*,
    2021 WL 5449932 (S.D.N.Y. Nov. 22, 2021) ...........................................7

*TBK Partners, Ltd. V. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982) ....12

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................9, 11

*Torres v. Gristede's Operating Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..........................................21

*Trinidad v. Pret a Manger (UDS) Ltd.*,
    2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014)..........................................16

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................19

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)..............................13, 16, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................9

*Wright v. Stern*,
    553 F.Supp.2d 337 (S.D.N.Y.2008)........................................................................1, 20

**STATUTES**

Federal Insecticide, Fungicide, and Rodenticide Act ............................................................2, 3, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................8, 11, 15, 16, 19

## I.    <u>INTRODUCTION</u>

On April 19, 2023, this Court preliminarily approved the Settlement in this case and directed notice to be sent to the Settlement Class.  *See* Order Granting Preliminary Approval of Class Action Settlement ("PA Order") (ECF No. 29).  The settlement administrator then implemented the Court-approved notice plan.  The reaction from the Class was overwhelmingly positive: hundreds of thousands of class members submitted claims, and in contrast, there was only one request for exclusion, and no objections.[1]  As of the time of this filing, no class member has provided notice of an intent to appear at the Final Approval Hearing to raise any objection or other issue concerning the Settlement (the deadline for such notice is July 28, 2023).  "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness.  *Wright v. Stern*, 553 F.Supp.2d 337, 344–45 (S.D.N.Y.2008); *see also In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593 at *2 (S.D.N.Y. June 16, 2020) (Rakoff, J.) ("*In re GSE Bonds II*") ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal quotation omitted).

The Settlement was reached after hard-fought negotiations in mediation with the assistance of Hon. Garrett E. Brown, (Ret.), the former Chief Judge of the United States District Court for the District of New Jersey.  It is an excellent result for class members, providing a common fund of $2 million to pay for cash claims of class members, notice and settlement administration, attorneys' fees and costs, and service awards.  The Products at issue here typically cost about $1.00–$5.00 each.  The Settlement Agreement allows Class Members to recover up to $15.00 per household with proof of purchase, and up to $6.00 per household without proof of purchase, subject to a *pro rata*

---

[1] The claim submissions are still subject to audit to confirm their validity, but pursuant to the PA Order, the Claims Administrator will submit a declaration to the Court on August 17, 2023, providing the number of claims.  The deadline to object or opt-out of the Settlement was July 3, 2023.  *See* PA Order, at p.9 (ECF No. 29).

adjustment if the number of valid claims exceeds the available funds.  Alternatively, if any funds are left after payment of valid class member claims, class members may receive a *pro rata* increase of up to $50 per household for those who submit proof of purchase, and up to $25 per household for those who do not.  If any funds continue to remain after payment to class members, the parties will seek the Court's approval to distribute the residual funds to one or more charities, to be selected later if the need arises.  *See In re Petrobas Secs. Litig.*, 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018) (Rakoff, J.) (holding *cy pres* recipients may be identified after settlement approval and a determination that there are funds remaining for *cy pres* distribution).

For the reasons discussed below, and consistent with this Court's findings in the Preliminary Approval Order, Plaintiffs respectfully ask the Court to grant final approval of this class action settlement.

## II.    BACKGROUND

### A.  Allegations and Procedural History

This class action commenced on July 12, 2022, and involves three antimicrobial products sold at large retailers such as Home Depot and Dollar General: Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes, and Wipe Out! Multi-Surface Decontaminant Spray.  Plaintiffs allege the products were marketed as being suitable for use as surface disinfectants, but lacked the required registration under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  FAC ¶¶ 21-24, 27-29, 33.  Plaintiffs further allege that without the required registration, the Products were illegal to sell. *Id.* at ¶ 4.  A First Amended Complaint was filed on October 12, 2022, adding additional factual allegations and additional Plaintiffs.  *See generally* FAC (ECF No. 18).

Defendant Tzumi Innovations, LLC moved to dismiss the FAC on November 2, 2022.  *See generally* MTD, ECF No. 21.  In addition to various challenges to the adequacy of the pleadings, Tzumi asserted several potentially dispositive defenses, including lack of Article III standing and

injury, the lack of a private right of action under FIFRA, and the availability of legal remedies barring equitable relief. *See generally id.*  Tzumi further contended that it had received FDA approval to sell the Wipe Out! wipes as personal care products.  Plaintiffs filed an opposition to the motion to dismiss on November 16, 2022. *See* ECF No. 24.

During motion practice and discovery, the parties began discussing the possibility of a classwide settlement in late October 2022, and agreed to schedule a mediation with Hon. Garrett E. Brown, (Ret.).  After engaging in preliminary settlement negotiations, the parties spent a full day in mediation with Judge Brown on November 21, 2022.  The parties in large part agreed to settlement terms during that mediation, although Judge Brown continued to help resolve a few remaining disputes on material terms during the next few days.  The parties then obtained three competing bids from class settlement administration companies, and jointly selected Angeion Group, the company that they believed would provide a robust notice program at a competitive price.  A final long-form settlement agreement was executed on or around December 21, 2022.

**B.  Summary of the Settlement**

**1.  Settlement Class**

The Settlement Class is defined as: "All persons in the United States (including in its states, districts, territories, or tribal reservations) who purchased one or more Class Products before the date of the Preliminary Approval Order [i.e., April 19, 2023]."  PA Order, at ¶ 3 (ECF. No. 29).[2]

---

[2] The following people and entities are excluded from the Settlement Class definition: "(1) any Judge or Magistrate Judge presiding over this Action and members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, members, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons." *Id.*

### 2. Relief to Class Members

Tzumi will pay a total of $2,000,000 in cash into a Settlement Fund for payment of: approved claims for cash benefits submitted by settlement class members; the notice and other administrative costs; attorneys' fees and expenses; and service awards to the named Plaintiffs. Class members may file a claim for cash payments, and may also select from one of four options for payment: check, Zelle Quick Pay, PayPal, or an electronic gift card. Settlement Agreement, §§ 2.1, 2.4 (ECF No. 27-2).

The amount that each class member may recover depends on: (1) whether a class member has proof of purchase, and (2) the total amount of valid claims made by class members. Class members who provide proof of purchase will be eligible for up to $3.00 per purchased Class Products, subject to a cap of $15.00 per household, and subject to *pro rata* adjustment if the claims exceed the amount made available in the Settlement Fund. *Id.* at § 2.2.2; *see also id.* § 2.2.6.1. Class Members without proof of purchase will be entitled to submit a claim for $2.00 per purchased Class Products, subject to a cap of $6.00 per household, and subject to *pro rata* adjustment if the claims exceed the amount made available in the Settlement Fund. *Id.* at § 2.2.3.

However, if the total amount of valid claims submitted by Class Members, plus notice and administration, attorneys' fees and expenses, and service awards is lower than the settlement fund, payments to the Class Members shall be increased *pro rata*. *Id.* at § 2.2.6.2. In that situation, class members who submit a valid claim with proof of purchase will have a *pro rata* increase of up to $50.00 per household, and class members who submit a valid claim without proof of purchase will have a *pro rata* increase of up to $25.00 per household. *Id.*

If any funds remain after such a *pro rata* increase, then the residual will be distributed on a *cy pres* basis to one or more charities to be selected by the parties if a *cy pres* distribution becomes necessary, and subject to approval from the Court. *Id.* Although class members are more likely to

request electronic payment rather than a check, nonetheless, any uncleared checks may also be subject to a *cy pres* distribution. *Id.* § 2.3. The Settlement Agreement does not include any provision permitting a reversion of Settlement Funds back to Tzumi.

### 3. Class Notice and Settlement Administration

Following this Court's grant of preliminary approval, the claims administrator Angeion Group provided notice to Settlement Class Members. Angeion Group disseminated notice using internet banner notice, a social media campaign, and a paid search campaign on Google. *See* concurrently filed Declaration of Steven Weisbrot, Esq. of Angeion Group On Settlement Administration ("Weisbrot Decl."), ¶¶ 16-20. This plan was reasonably calculated to achieve no less than 80% reach to class members. *Id.* at ¶ 14. Collectively, these notice methods delivered over 72 million impressions. *See id.* at ¶¶ 17, 19-20. Angeion Group also created a settlement website for receiving online claims submissions, providing notice, and making relevant documents concerning the case and the proposed settlement available to class members, as well as a toll-free phone number to provide information to class members. *See id.* at ¶¶ 21-24.

### 4. Objection and Exclusionary Provisions

Everyone in the Settlement Class had the right to opt-out or object to the Settlement. The notice informed each such person of his or her right to request exclusion from the Settlement Class and not to be bound by the Settlement Agreement, or to object to the Settlement. The deadline to submit an opt-out request or objection was July 3, 2023. *See* PA Order, at p.9 (ECF No. 29). The administrator received no objections and only one request for exclusion. Weisbrot Decl., ¶¶ 26-27.

### 5. Release Provisions

The "Released Parties" in the Settlement Agreement is defined as follows:

Tzumi Innovations, LLC, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, divisions, licensors, licensees, associates, affiliates,

> employers, agents, related business entities, consultants, independent contractors, insurers, and customers, including without limitation, all of its or their respective current, future, or former employees of the foregoing, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

Settlement Agreement, § 1.26 (ECF No. 27-2).

> The Settlement Agreement's release provision states as follows:

> Effective as of the Effective Date, each the Releasing Parties, including each and all of the Settlement Class Members who did not opt out, as well as each Named Plaintiff, will release all the Released Parties, including the Defendant and any and all of its current, former, and future parents, predecessors, successors, affiliates, assigns, subsidiaries, divisions, licensors, licensees, associates, employers, agents, related corporate and business entities, heirs, estates, trustees, administrators, executors, insurers, attorneys, and customers, and all of their respective current, future, and former employees, officers, directors, managing directors, principals, shareholders, partners, members, assigns, agents, attorneys, accountants, financial and other advisors, underwriters, lenders, auditors, investment advisors, legal representatives, companies, firms, trusts, and corporations, from any and all causes of action, suits, claims, liens, demands, judgments, costs, damages, obligations, attorneys' fees (except as provided for in the Class Settlement), and all other legal responsibilities in any form or nature, including but not limited to all claims relating to or arising out of state, local, territorial, or federal statute, ordinance, regulation, or claim at common law or in equity, whether past, present, or future, known or unknown, asserted or unasserted, arising out of or in any way related to the allegations in the action.

*Id.* at § 6.1.

### 6.  Service Awards and Attorneys' Fees and Expenses

Under the Settlement Agreement, Plaintiffs may request a service award of $2,500 each, and Plaintiffs' counsel may request an award of attorneys' fee award and expenses not to exceed $666,666 (approximately one third of the Settlement Fund).  Consistent with Fed. R. Civ. P. 23(h)'s requirements, and this Honorable Court's Order Granting Preliminary Approval (ECF No. 19), the motion for fees and service awards was filed on June 2, 2023, approximately one month before the objection deadline and more than two months before the final approval hearing, thereby providing an opportunity for class members to object to the requests.  *See Guevoura Fund Ltd. v. Sillerman*,

2019 WL 6889901, at *13 (S.D.N.Y. 2019) (fee motion provided reasonable time for objection when it was filed one month before the objection deadline and two months before the scheduled final approval hearing).  There were no objections to the proposed service awards or the proposed award of attorneys' fees and expenses.  *See* Weisbrot Decl., ¶ 27.

III.    **ARGUMENT**

A. **The Court Should Confirm as Final the Preliminary Certification of the Proposed Settlement Class**

The Court's Preliminary Approval Order provisionally certified a Settlement Class solely for purposes of settlement.  PA Order, at 2, ECF No. 29.  No substantive changes have occurred since that ruling, and, more importantly, no objections have challenged that conclusion.  The Court may therefore rely on the preliminary approval order to find that class certification is appropriate for purposes of final approval.  *See*, *e.g.*, *Santos v. Nuve Miguel Corp.*, 2023 WL 2263207, at *1 (S.D.N.Y. Feb. 28, 2023) ("the Court confirms as final its certification of the Class for settlement purposes based on its findings in the Preliminary Approval Order and in the absence of any objections from Class Members to such certification."); *Swetz v. GSK Consumer Health, Inc.*, 2021 WL 5449932, at *2 (S.D.N.Y. Nov. 22, 2021) ("Certification of the Settlement Class is hereby reaffirmed as a final Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for the same reasons set forth in the Court's Preliminary Approval Order.").

B. **Final Approval of the Proposed Settlement Is Appropriate**

The law favors settlement, particularly in class actions because they tie up substantial judicial resources, use up the parties' time and money, and in such cases, litigated resolution is usually significantly delayed.  *See Palacio v. E*TRADE Fin. Corp.*, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012).  "Absent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colleges Holding Corp.*

*Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  Likewise, when reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

To grant final approval of a proposed settlement, the Court must find "that it is fair, reasonable, and adequate."  In doing so, the Court considers the factors laid out in Rule 23(e)(2), as well as in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), to determine whether this standard has been met.  *In re GSE Bonds II*, 2020 WL 3250593 at *1.

Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

(A) class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length

(C) the relief provided for the class is adequate, taking into account:

     (i) the costs, risks, and delay of trial and appeal;

     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

     (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (Rakoff, J.) ("*In re GSE Bonds I*").

Courts also supplement the 23(e)(2) analysis with the *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (citing *Grinnell*, 495 F.2d at 463).

As set forth below, the settlement satisfies both the Rule 23(e)(2) factors as well as the *Grinnell* factors, noting where the factors overlap.

### 1. Rule 23(e)(2)(A): Adequate Representation

The Court preliminarily found that the named Plaintiffs and their counsel "have and will continue to fairly and adequately represent and protect the interests of the Settlement Class." PA Order, at 2, ECF No. 29. Nothing has happened to warrant reconsideration of that finding. The time and efforts expended by Plaintiffs and their counsel in this case are detailed in the Motion for Attorney Fees and Costs, and for Plaintiffs' Service Awards. *See generally*, ECF No. 31. Moreover, after Preliminary Approval, counsel diligently worked with the Settlement Administrator and with Tzumi's counsel to ensure that the notice and claims administration proceeded according to plan. The positive response of class members to the Settlement and the high number of claims submitted further supports the conclusion that Plaintiffs and their counsel are adequate.

Further, the involvement of "experienced, capable counsel" gives the resulting agreement a "presumption of correctness." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation marks omitted). Milberg and Bursor & Fisher have proven track records in the prosecution of complex class actions nationwide. Firm resumes for both firms were recently submitted to the Court in support of the Motion for Attorneys' Fees and Costs, and For Plaintiffs'

Service Awards. *See* ECF No. 31-1 (Exhibit 13 to Smith Declaration); ECF No. 31-2 (Exhibit 2 to Soffin Declaration). This Court has in the past found Bursor & Fisher, P.A. to "have experience litigating consumer claims, noting that it "has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008." *Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (Rakoff, J.). Milberg also has extensive experience and success in litigating consumer class actions and has been recognized by numerous courts. *See e.g. Cleveland v. Whirlpool Corp.*, 2022 WL 2256353 (D. Minn. June 23, 2022); *Hamm v. Sharp Electronics Corp.*, No. 5:19-cv-00488, ECF No. 62 (M.D. Fla. Jan. 7, 2021); *Ellen Berman, et al. v. General Motors LLC*, Case No. 2:18-cv-14371, ECF No. 161 (S.D. Fla. Nov. 18, 2019). Accordingly, class members have been well represented.

### 2.  Rule 23(e)(2)(B): Arm's Length Negotiation

As this Court has held, "if a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness. Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *In re GSE Bonds I*, 414 F. Supp. 3d at 693 (internal quotations and citations omitted). In its Preliminary Approval Order here, the Court "preliminarily [found] that the Settlement Agreement has been reached as a result of an arm's-length negotiation of disputed claims." PA Order, at 1-2 (ECF No. 29). Nothing warrants a different conclusion now, particularly given that the settlement was reached as a result of a full-day mediation and subsequent negotiations, presided over by Judge Hon. Garrett E. Brown (Ret.). Further, Plaintiffs are represented by two firms that practice almost exclusively in class actions, and Tzumi is likewise represented by counsel who is knowledgeable and experienced in class litigation. The experience of the firm and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining table. "[G]reat weight is accorded to the recommendation of counsel, who are most closely

acquainted with the facts of the underlying litigation.'" *In re Telik Inc. Sec. Litig.,* 576 F.Supp.2d 570, 576 (S.D.N.Y.2008) (citing *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 366 (S.D.N.Y.2002)).

Thus, under this Court's decision in *In GSE Bonds*, the Settlement here enjoys a presumption of fairness.

### 3. Rule 23(e)(2)(C) and the Overlapping First, Fourth, Fifth, Sixth and Seventh *Grinnell* Factors: Adequacy of Relief

Rule 23(e)(2)(C) requires examining whether relief for the class is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

As set forth below, each of these four factors—along with related *Grinnell* factors that bear on the adequacy of relief—support settlement approval here.

### i. Costs, Risks, Delay of Trial and Appeal (Rule 23(e)(2)(C)(i) and the First, Fourth, Fifth, and Sixth *Grinnell* factors)

This inquiry overlaps significantly with the first *Grinnell* factor (the complexity, expense and likely duration of the litigation), the fourth *Grinnell* factor (the risks of establishing liability), the fifth *Grinnell* factor (the risks of establishing damages), and the sixth *Grinnell* factor (the risks of maintaining the class action through the trial), which help guide the Court's application of Rule 23(e) (2)(C)(i). *In re GSE Bonds I*, 414 F.Supp.3d at 693-694.

As for the costs, risks, and delay of trial and appeal, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022); *Grinnell*, 495 F.2d at 463. As such, courts have consistently held that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to

the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. V. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982). Here, the positive reaction of class members shows that the settlement is not "clearly inadequate."

Regarding the relevant first *Grinnell* factor, the "complexity, expense and likely duration of the litigation," the Settlement provides favorable monetary benefits to the Settlement Class while avoiding the significant expenses, delays, and risks associated with litigation. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 174, 175–76 (S.D.N.Y. 2000). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception. Proceeding to trial is a risky and labor-intensive undertaking. Defendant would continue to contest the matter at every opportunity and on all fronts. While Plaintiffs believe that the action has merit and that they would ultimately prevail at trial, continued litigation would last for an extended period before a class might be certified or a final judgment might be entered in favor of the Class (if any). Any trial would likely last at least 1–2 weeks, and involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence. *Id.* Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Action. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years."); *In re GSE I*, 414 F. Supp. 3d at 693 ("Interlocutory appeals may arise after the Court's class

certification decision, generating lengthy delays.  Finally, even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.") (internal quotation omitted).  By settling, Plaintiffs avoid the expenditure of resources and risk associated with trial, and they guarantee a quicker recovery to the Class.  Because the risks of proceeding to trial are substantial, the settlement warrants final approval. *See e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.") (internal quotation marks omitted).

The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks, *i.e.*, the risks of establishing liability and damages, and maintaining the class action through trial.  *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *5 (E.D.N.Y. Oct. 23, 2012); *In re GSE I*, 414 F. Supp. 3d at 693 (citation omitted) ("To assess these factors, a court "should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.").  "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y.1997).

One purpose of a settlement is to avoid the uncertainty of a trial on the merits.  Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).  The Court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the

settlement.'"  *In re Austrian and German Bank Holocaust Litig*., 80 F.Supp.2d at 177 (quoting *Marisol A. ex rel. Forbes v. Giuliani,* 185 F.R.D. 152, 164 (S.D.N.Y.1999)).

The fourth and fifth factors under *Grinnell* require the Court to consider the risks of establishing liability and damages.  There are significant hurdles to proving liability or even proceeding to trial here.  Tzumi moved to dismiss on November 2, 2022.  *See generally* MTD, ECF No. 21.  In addition to various challenges to the adequacy of the pleadings, Tzumi asserted several potentially dispositive defenses, including lack of Article III standing and injury, the lack of a private right of action under FIFRA, and the availability of legal remedies barring equitable relief.  *See generally id.*  Plaintiffs filed an opposition to the motion to dismiss on November 16, 2022.  *See* ECF No. 24.

The sixth *Grinnell* factor considers the risk of maintaining class status through trial.  Although class certification has been preliminarily approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of a settlement.  If the Settlement was not granted final approval, Tzumi would certainly challenge class certification, and the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement.  *See also deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *6 (S.D.N.Y. Aug. 23, 2010) (finding settlement eliminated the risk, expense, and delay inherent in a contested class certification motion and therefore the sixth *Grinnell* factor was satisfied).

Without the Settlement, litigating this action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals, would be complex, time-consuming, and expensive.  Here, the Settlement provides a substantial monetary benefit to Settlement Class Members without the risk and delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…if a shareholder or class member was willing to assume all the risks of [Litigation]…the passage of time would introduce yet more risks…and would,

in light of the time value of money, make future recoveries less valuable than this current recovery.").

The Settlement avoids the risks inherent in protracted litigation and provides a prompt and favorable resolution to the Class. Accordingly, the first, fourth, fifth, and sixth *Grinnell* factors weigh in favor of final approval.

### ii.     Effectiveness of the Proposed Method of Distributing Relief to Class Members (Rule 23(e)(2)(C)(ii)

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re GSE Bonds I*, 414 F. Supp. 3d at 694. Furthermore, while the plan of allocation "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*

Here, the parties have hired and consulted with Angeion Group to implement a notice program "reasonably calculated to achieve no less than 80% reach," as required under the Settlement Agreement. Weisbrot Decl., ¶ 14; *see also* Settlement Agreement, § 4.1.2 (ECF No. 27-2). The claim form was simple and encouraged class members to file claims by offering several convenient options for receiving payments electronically, or by check if they prefer. *See id.* at § 2.2.4 and Exhibit A to Settlement Agreement (Claim Form).

### iii.     The Terms of Any Proposed Award of Attorneys' Fees (Rule 23(e)(2)(C)(iii)

The attorney fee provision permits counsel to seek an award of fees and costs no more than $666,666, which is one-third the total value of the settlement fund. This amount is "well within the applicable range of reasonable percentage funds awards." *In re GSE Bonds I*, 414 F. Supp. 3d at

696; *see also*, *e.g.*, *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 103522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).  In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). Therefore, the fee award sought does not weigh against final approval.

### iv.    Any Agreement Required to be Identified Under Rule 23(e)(2)(C)(iv)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal."  Here, however, there are no other agreements made in connection with the parties' settlement proposal, other than the Settlement Agreement and its exhibits provided with this motion.  There are no undisclosed side agreements between the parties or with third parties.

### v.    Remaining *Grinnell* Adequacy Factors

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial.  *See In re GSE Bonds I*, 414 F. Supp. 3d at 686.  While Tzumi has the wherewithal to defend this case, it is not a large company like Deutsche Bank, Microsoft, or Facebook.  During the mediation, Plaintiffs' counsel received information calling into doubt Tzumi's ability to withstand a significantly more substantial judgment, particularly given that it already been ordered to pay a civil penalty of $1.5 million to the FTC related to the claims at issue here.  Even if Tzumi could do so, however, this Court and other courts generally do not find this factor to be an impediment to settlement when the other factors favor the settlement.  *See id.* ("this factor, standing alone is not enough to require disapproval of the FTN settlement at this stage."); *see also In re Vitamin C Antitrust Litig.*, 2012

WL 5289514, at *6 (E.D.N.Y. 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("Even if they could, a 'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'") (internal citations omitted).

Courts typically analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462).  The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693; *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).  In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to Settlement Class Members now, rather than the potential for a payment years down the road.  *See In re Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

The settlement is an excellent result for class members, providing a common fund of $2 million to pay for cash claims of class members, notice and settlement administration, attorneys' fees and costs, and service awards.  The Products at issue here typically cost about $1.00–$5.00 each.  The Settlement Agreement allows Class Members to recover up to $15.00 per household with proof of purchase, and up to $6.00 per household without proof of purchase, subject to a *pro rata* up or down adjustment if the number of claims exceeds the available funds.  If there is any residual amount left in the fund after payment of class member claims, class members may receive a *pro rata* increase of up to $50.00 per household for those who submit proof of purchase, and up to $25.00 per household for those who do not.  If any funds remain after payment to class members, the parties will seek the Court's approval to distribute the residual funds to one or more charities, to be selected later if the need arises.  As a result, this represents a very favorable recovery under any circumstances

and is well above the recovery range of settlements that have received approval within this District. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

### 4. Rule 23(e)(2)(D): Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Here, the only distinction made between class members is the amount of relief available to those who have proof of purchase and those who do not. However, this is a common distinction in class action settlements involving consumer products. As one district court explained, the distinction accounts for the fact that class members without proof of purchase have "substantially weaker claims because of the additional difficulty they would face in proving that they did in fact purchase a Class Product." *Kaupelis v. Harbor Freight Tools USA Inc.*, 2022 WL 2288895, at *7 (C.D. Cal. Jan. 12, 2022). Thus, "the different forms of relief are justified and equitable." *Id. Pro rata* adjustments to account for the number of claims made are also equitable. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the

class members equitably . . . and has the benefit of simplicity"); *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all class members will be subject to the same formula for the distribution of the fund") (cleaned up).

### 5.  Remaining *Grinnell* Factors (*Grinnell* Factors 2 and 3)

*Grinnell* factor 2 assesses the reaction of the class to the settlement and *Grinnell* factor 3 assesses the stage of proceedings and the amount of discovery completed.  For the reasons discussed below, these *Grinnell* factors are satisfied.

### i.    The Reaction of the Class is Overwhelmingly Positive (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463).  "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted).  This "significant" factor weighs heavily in favor of final approval.

Here, the reaction from the Class was overwhelmingly positive: hundreds of thousands of claims were submitted, but there was only one request for exclusion, and no objections.  Weisbrot Decl., ¶¶ 25-27.  The lack of objections to the Settlement indicates that Settlement Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness."  *See*, *e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Wright v. Stern*, 553 F.Supp.2d 337, 344–45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class

members objected and 3 opted out and noting "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness.); *Austrian and German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 175–76 (finding small number of objections weighed in favor of settlement where of 27,883 notices sent to class members, 72 persons requested exclusion and 18 written objections and comments were filed).

As this and other courts have held, "'[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *In re GSE Bonds II*, 2020 WL 3250593 at *2 (quoting *Wal-Mart Stores*, 396 F.3d at 18). Likewise, "de minimis exclusion requests counsel in favor of approval." *Id.* Here, there were no objections and only one request for exclusion; in contrast, there were thousands of claim submissions. That is potent evidence that the relief provided is adequate. Consequently, the second *Grinnell* factor weighs in favor of final approval of the Settlement.

### ii. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *See Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).

Plaintiffs' and Class Counsel's knowledge of the merits as well as the strengths and weaknesses of their claims is adequate to support the Settlement. This knowledge is based, in part, on the investigation undertaken by Class Counsel in preparing the initial and amended complaints, analyzing the litigation between Defendant and the Environmental Protection Agency, and conducting discovery. As a result, Plaintiffs and Class Counsel were in a position to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendant. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.

2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement").

Here, prior to mediation, and in Plaintiffs' view, several key facts had been established by admissions that Tzumi made in other, similar litigation with the EPA. *See* FAC, ¶¶ 40-42 (quoting relevant admissions). Additional sales data was obtained from Tzumi and third-party retailers. Conversely, Tzumi's pending motion to dismiss highlighted several potentially dispositive challenges to Plaintiffs' claims. During mediation, the parties thoroughly discussed and vetted the facts and law, as Judge Brown engaged in a critical analysis of the parties' arguments. *Id.* at ¶ 22. This information exchange was sufficient for Class Counsel to appreciate the strengths and weaknesses of the case before both negotiating and recommending settlement. *See also deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *5 (S.D.N.Y. Aug. 23, 2010) (finding third *Grinnell* factor weighed in favor of final approval where the plaintiffs obtained sufficient discovery through an efficient, informal exchange of information, followed by a mediation session which "allowed them to further explore the claims and defenses.").

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

## IV.  <u>CONCLUSION</u>

The proposed Class Settlement here has achieved an overwhelmingly positive response from Settlement Class Members, with no objectors and hundreds of thousands of class members standing to benefit. For the reasons set forth above, Plaintiffs respectfully ask the Court to confirm its certification of the Settlement Class and issue final approval of the Settlement.

Dated: July 28, 2023                              Respectfully submitted,


                                                  By: /s/ Rachel Soffin
                                                  Rachel Soffin*
                                                  **MILBERG COLEMAN BRYSON
                                                  PHILLIPS GROSSMAN, PLLC**
                                                  First Tennessee Plaza
                                                  800 S. Gay Street, Suite 1100
                                                  Knoxville, Tennessee 37929
                                                  Tel: 865-247-0080
                                                  rsoffin@milberg.com

                                                  **MILBERG COLEMAN BRYSON
                                                  PHILLIPS GROSSMAN, PLLC**
                                                  Russell Busch (6329500)
                                                  405 E 50th Street
                                                  New York, NY 10022
                                                  Tel: (630) 796-0903
                                                  rbusch@milberg.com

                                                  **MILBERG COLEMAN BRYSON
                                                  PHILLIPS GROSSMAN, PLLC**
                                                  Nick Suciu III*
                                                  6905 Telegraph Road, Suite 115
                                                  Bloomfield Hills, MI 48301
                                                  Tel: (313) 303-3472
                                                  nsuciu@milberg.com

                                                  **MILBERG COLEMAN BRYSON
                                                  PHILLIPS GROSSMAN, PLLC**
                                                  Trenton R. Kashima*
                                                  401 West C St., Suite 1760
                                                  San Diego, CA 92101
                                                  Tel: (308) 870-7804
                                                  tkashima@milberg.com

                                                  **MILBERG COLEMAN BRYSON
                                                  PHILLIPS GROSSMAN, PLLC**
                                                  J. Hunter Bryson*
                                                  Zoe T. Aaron
                                                  405 E 50th Street
                                                  New York, NY 10022
                                                  Tel: (630) 796-0903
                                                  hbryson@milberg.com
                                                  zaaron@milberg.com

23

**BURSOR & FISHER, P.A.**
Joel Smith*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel.: (925) 300-4455
jsmith@bursor.com

*\* Pro Hac Vice*

*Attorneys for Plaintiff and the Proposed
Classes*